## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

EDWARD ALLEN KEETER,

            Debtor.

_____/

EDWARD ALLEN KEETER,

            Plaintiff/Counter-Defendant,

v.

SOUTHWEST MICHIGAN ASSET
MANAGEMENT, LLC, MICHAEL T.
GARRISON, and KYLE M. HAMMOND,

            Defendants/Counter-Plaintiff

Case No.: 23-01759
Chapter 13
Hon. Scott W. Dales
Filed: 8/1/2023

Adv. Pro No.: 24-80076-swd

---

## <u>DEFENDANT/COUNTER-PLAINTIFF, SOUTHWEST MICHIGAN ASSET MANAGEMENT, LLC'S, MOTION FOR SUMMARY JUDGMENT UNDER RULE 56</u>

Now Comes, Plaintiff/Counter-Defendant, Southwest Michigan Asset Management ("SWMAM"), through its counsel, Warner Norcross + Judd, LLP, and for its motion for summary judgment, states as follows:

SWMAM relies on and incorporates it brief attached hereto. Concurrence was sought and denied.

Wherefore, SWMAM respectfully request that this honorable Court order as follows:

A.     Grant summary judgment on SWMAM's breach of contract counterclaim and order Keeter to vacate the Property;

B.     Grant summary judgment and dismiss Keeter's complaint in totality.

               Respectfully Submitted,

               WARNER NORCROSS + JUDD, LLP

32752936

*/s/ John A. MacKenzie*
John A. MacKenzie (P80386)
Attorney for Defendants/Counter-Plaintiff
Southwest Michigan Asset Management, LLC
12900 Hall Road, Suite 200
Sterling Heights, MI 48313
Dated: July 1, 2025          586-303-4100
jmackenzie@wnj.com

**PROOF OF SERVICE**

I hereby certify that on **July 1, 2025**, I electronically filed and served the above document(s) and this Proof of Service with the Clerk of the Court using the CM/ECF File & Serve E-Filing System, which will send notification of such filing to those who are currently on the list to receive e-mail notices for this case..

Warner Norcross + Judd LLP

By: /s/ Bernadette Bartoy
Bernadette Bartoy, Legal Assistant

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

In re:

EDWARD ALLEN KEETER,

              Debtor.                               Case No.: 23-01759
                                                   Chapter 13
_____/        Hon. Scott W. Dales
EDWARD ALLEN KEETER,              Filed: 8/1/2023

              Plaintiff/Counter-Defendant,

v.                                         Adv. Pro No.: 24-80076-swd

SOUTHWEST MICHIGAN ASSET
MANAGEMENT, LLC, MICHAEL T.
GARRISON, and KYLE M. HAMMOND,

              Defendants/Counter-Plaintiff

---

**BRIEF IN SUPPORT OF DEFENDANT/COUNTER-PLAINTIFF, SOUTHWEST**
**MICHIGAN ASSET MANAGEMENT, LLC'S, MOTION FOR SUMMARY JUDGMENT**
**UNDER RULE 56**

**I.      INTRODUCTION**

        In this case, Keeter was in the precarious position of facing an imminent foreclosure where Keeter would lose his property and receive nothing in return. Southwest Michigan Asset Management ("SWMAM") is a real estate investment company who offered to pay Keeter $5,000 in exchange for this property and his debt. The parties entered into a written purchase agreement; and had a meeting where SWMAM paid Keeter the $5,000 in exchange for a deed and receipt. SWMAM would receive the interest in the Property and payoff Keeter's mortgage liability to 5/3 Bank. A win-win for both parties.

Several months later, Keeter regretted his decision and refused to vacate the property. Keeter then initiated a bankruptcy proceeding to prohibit SWMAM from removing him from the property. Keeter is using this process as a shield to maintain possession, and as a sword to try to void the agreement.

As discussed below, summary judgment should be ordered in favor of SWMAM and Keeter should be ordered to vacate the property; and Keeter's complaint should be dismissed in totality.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff Keeter met with Hammond and sold the Property to SWMAM for $5,000 and his debt, to avoid an imminent foreclosure.

Plaintiff/Counter-Defendant, Edward Allen Keeter ("Plaintiff" or "Keeter"), filed a complaint against Defendant/Counter-Plaintiff, Southwest Michigan Asset Management, LLC ("Defendant" or "SWMAM") and SWMAM employee, Kyle Hammond ("Defendant" or "Hammond"), for the following: 1) Statute of Frauds, 2) Fraudulent Transfer, 3) Slander of Title, 4) Quiet Title, and 5) Notarial Misconduct (**Exhibit F**: Complaint). Keeter's complaint lacks merit and is intended only to try to reverse a real estate transaction that Keeter freely, knowingly, and voluntarily entered into.

Keeter is the owner of the real property commonly known as: 1432 Miami Rd., Benton Harbor, MI 49022 (the "Property").   In June 2023, the Property was in a delinquent status because Keeter defaulted on his promissory note with 5/3 Bank, which was secured by a mortgage, Instrument Number 2002016997, recorded in the Berrien County Register of Deeds as Libre 2243, Page 220 (referred to hereinafter as the "Note" and "Mortgage"). (**Exhibit A**: Keeter Transcript, pp14-15)   A foreclosure sale was imminent.   As a result, Keeter was receiving a

plethora of phone calls from debt consultants and investors to purchase the Property. (**Exhibit A**, pp 16-17).

SWMAM was one of the investors who contacted Keeter and offered to purchase the Property and Keeter's debt in exchange $5,000. SWMAM's employee, Co-Defendant Hammond, met Keeter at the Property and paid him the $5,000 in exchange for a signed agreement and deed (referred to hereinafter as the "Hammond Meeting"). Keeter admits to meeting Hammond in his driveway, accepting the $5,000, and signing the receipt for the sale of the Property:

> *Q:    You talked to them. And did you ever do a transaction with any of them?*
>
> *A:    ... the one guy (Hammond)... And so I just tore a sheet out of my workbook, wrote down that I received the check.*

(**Exhibit A**, pp 26-27). Keeter continued:

> *Q:    I see. And what can you tell me about this individual?*
>
> *A:    He was a young person in a car (referring to Hammond). ... and he gave me a check.*

(**Exhibit A**, p 28).

...

> *A:    He said he would like to have a receipt. So, I just tore a piece of notebook paper off and signed that I received the check.*

(**Exhibit A**, p 30). The aforementioned testimony is admissions from Keeter that he met Hammond, accepted $5,000 for the sale of the Property, and signed a receipt. SWMAM purchased Keeter's Property and debt through a valid and binding Agreement, and Keeter received $5,000 in lieu of foreclosure of his Property.

     **B.    Although Keeter denies it, Keeter executed a purchase agreement and deed at the Hammond Meeting.**

The Hammond Meeting occurred on June 2, 2023, as evidenced by the documents. (**Exhibit B**: Agreement; **Exhibit C**: Deed; **Exhibit D**: Receipt). At the Hammond Meeting, Keeter executed the Agreement to sell the Property to SWMAM in exchange for $5,000. (**Exhibit B**). Forensic handwriting expert, Erich Speckin, confirmed that Keeter executed the Agreement. (**Exhibit E**). The Agreement states in relevant part, as follows:

1. Keeter, for valid consideration, has conveyed the property commonly known as 1432 Miami Rd., Benton Harbor, MI 49022, Tax Parcel No. 11-18-0125-0035-03-1 (the "Property") to SWMAM by Quit Claim Deed dated June 2, 2023.

2. Through October 2, 2023, SWMAM agrees to take action necessary to oppose any efforts by the holder of the Sheriff's Deed that encumbers the Property to shorten the foreclosure redemption period pursuant to MCL 600.3237, 600.3238 or 600.3241a (if applicable). SWMAM will pay all legal fees regardless of the outcome.

3. Pursuant to the assignment of redemption rights and surplus rights as granted in the Quit Claim Deed, SWMAM will secure, through its attorney, any surplus funds that may result from the Sheriff's Foreclosure Sale of the Property, which is scheduled to occur on July 14, 2023 and SWMAM will retain all said surplus funds.

4. Through October 2, 2023, SWMAM grants to Keeter the option to have the Property conveyed back to him by SWMAM by Quit Claim Deed if he is able to procure the full amount of funds necessary to redeem the Property from foreclosure pursuant to MCL 600.3240 and/or satisfy any outstanding liens on said Property plus the Five Thousand and 00/100 Dollars ($5,000.00) SWMAM gave to Keeter for consideration; however, notwithstanding the foregoing, SWMAM's obligation to convey the Property back to Keeter is contingent on Keeter producing to SWMAM proof that the funds were not obtained from any other person or entity or through a contractual agreement to sell the Property to a third-party.

5. If Keeter fails to redeem and/or satisfy any outstanding liens on said Property; return the $5,000.00 to SWMAM paid for the Quit Claim Deed; and provide proof to SWMAM as to where he secured said funds by **October 2, 2023** his option interest as set forth above in Section 4 shall terminate. Keeter hereby acknowledges that SWMAM, pursuant to the Quit Claim Deed, shall then have the full and exclusive right to redeem the Property from foreclosure and/or satisfy any outstanding liens on said property. Keeter will retain the $5,000.00 consideration previously paid by SWMAM for the Quit Claim Deed.

6.      Assuming Keeter has not sufficiently exercised the option as set forth in Section 4, **Keeter's failure to vacate the Property by the above agreed date** will result in an eviction action being filed by SWMAM in District Court to evict Keeter And All Occupants. Keeter acknowledges that no Notice to Quit or other form of notice must be served on him by SWMAM before initiating an eviction action.

7.      All terms must be met and executed by the close of business at 5:00 p.m. EST no later than October 2, 2023. Funds must be paid in the form of Cashier's Check which can be distributed to 111 Hawthorne Ave., St. Joseph, MI 49085 or can be mailed to P.O. Box 81, St. Joseph, MI 49085.

8.      No contractual agreement written, verbal or otherwise can be made and executed throughout the duration of this contract regarding said property.

9.      Keeter acknowledges by signing this contract that SWMAM has made him fully aware of his statutory redemption rights with said redemption rights expiring on or about six (6) months after the scheduled sale date of July 14, 2023**.**

(**Exhibit B**).

When Keeter filed his complaint, he attached the Agreement to it as an exhibit.  (**Exhibit F**: Keeter's Complaint).  The only way that Keeter's counsel had a copy of the Agreement to attach as an exhibit to the complaint is because Keeter gave it to him. The Agreement is not a public or recorded document, and only Keeter and SWMAM had copies. The only way counsel would receive a copy is from Keeter. A trier of fact should easily draw this inference.

On June 2, 2023, Keeter met with Hammond, signed the Agreement, Deed, and receipt, in exchange for $5,000. Keeter now regrets the decision to sell his Property and is using the bankruptcy court as a mechanism to try to reverse the transaction. Keeter is in breach of the Agreement by refusing to vacate the Property.

## III.    STANDARD OF REVIEW

Under Rule 56, a party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion. Rule 56.  Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment must be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Guarino v Brookfield Tp. Trustees*, 980 F.2d 399, 403 (Sixth Cir. 1992).

## IV.    LEGAL DISCUSSION

### A.    Summary judgment is warranted on SWMAM's breach of contract claim because Keeter was contractually required to vacate the Property on or before October 2, 2023.

A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach.  *Miller-Davis Co. v Ahrens Const., Inc*., 495 Mich 161, 178; 848 NW2d 95 (2014).  A court must construe and apply unambiguous contract provisions as written. *Rory v Continental Ins. Co*., 473 Mich 457, 461; 703 NW2d 457 (2005). If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). The judiciary is without authority to modify unambiguous contracts or rebalance the contractual equities struck by the contracting parties because fundamental principles of contract law preclude such subjective post hoc judicial determinations of "reasonableness" as a basis upon which courts may refuse to enforce unambiguous contractual provisions. *Rory v Continental Ins. Co*., 473 Mich at 461.

Here, Plaintiff Keeter admits to attending the Hammond Meeting in his driveway. (**Exhibit A**, pp 26-30).  Keeter admits to accepting $5,000 and signing a receipt to memorialize

32500394                                    8

the sale of his Property to SWMAM.  (**Exhibit A**, pp 26-30).  The deed and Agreement were signed contemporaneously with the receipt and exchange of consideration.  (**Exhibit E**). Therefore, Keeter is contractually bound to the transaction to sell the Property.

Moreover, the parties performed the Agreement, but for Keeter's refusal to vacate the Property on or before October 2, 2023.  (**Exhibit B**; **Exhibit C**; **Exhibit D; Exhibit E**).  The Agreement is unambiguous that Keeter must vacate the Property on or before October 2, 2023 if he failed to redeem, both of which occurred.  (**Exhibit B**).  Thus, Keeter is in breach and summary judgment is warranted on SWMAM's breach of contract claim.

> **B.**   **The Statute of Frauds does not apply because there are three signed writings to memorialize the transaction; and it is an affirmative defense, not a claim. This claim should be dismissed.**

Generally, the Statute of Frauds bars an oral contract for an interest in real estate beyond one year.  MCL 566.106; MCL 566.108.  Statute of Frauds is an affirmative defense, not a claim. *See, Lakeside Oakland Development*, 249 Mich App 517, 526-527; 644 NW2d 765 (2002).

Here, this is not an oral agreement. Rather, there is a written agreement – the Agreement, a signed deed, and signed receipt.  (**Exhibit B**; **Exhibit C**; **Exhibit D; Exhibit E**).  This is three signed writings memorializing the transaction.  The Statue of Frauds does not apply, and the claim should be dismissed.

Furthermore, the Statute of Frauds is an affirmative defense, not a claim. Hypothetically, Keeter could assert a statute of frauds defense if there were no signed writing to memorialize the transaction. However, that is not what occurred here. Rather, as stated above, Keeter signed the Agreement, receipt, and deed to memorialize the transaction.  (**Exhibit B**; **Exhibit C**; **Exhibit D; Exhibit E**).  The Statute of Frauds is not a claim.  Therefore, summary judgment is warranted.

> **C.**   **Keeter's fraudulent transfer count should be dismissed because adequate consideration was paid, and the transfer was not in contemplation of bankruptcy**.

The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily:

**(A)** made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

**(B)(i)** received less than a reasonably equivalent value in exchange for such transfer or obligation; and

**(ii)(I)** was insolvent on the date that such transfer was made, or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

**(II)** was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

**(III)** intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

**(IV)** made such transfer to or for the benefit of an insider or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 USC 548(a)(1).

Here, Keeter sold the Property to SWMAM for $5,000, which was encumbered by a 5/3 mortgage. When SWMAM purchased the Property, it also purchased Keeter's debt and

32500394                                    10

obligation to pay off the 5/3 mortgage, which was accelerated as a consequence of Keeter's default.  This was a benefit to both Keeter and his creditor 5/3 and the Agreement avoided a foreclosure. Under the Agreement, SWMAM allowed Keeter five months to pay off 5/3 before relinquishing possession of the Property to SWMAM, which he could not do.  If the Agreement was not performed, Keeter would have lost the Property and been paid $0. Accordingly, there was no fraudulent transfer and Keeter received adequate value for the Property. Keeter's fraudulent transfer claim should be dismissed.

Moreover, Keeter's claim is perplexing. Keeter is essentially arguing that he participated in a fraud in contemplation of bankruptcy to circumvent his creditor, 5/3. However, this is not what occurred because the Property was secured by the mortgage and SWMAM is obligated to pay off the mortgage to clear title to the Property. Keeter should not be permitted to abuse process to avoid his contractual obligations – **to both 5/3 and SWMAM**.

     **D.**    **Keeter's quiet title and slander of title claims should be dismissed.**

For the reasons discussed above, these claims should be dismissed. Keeter signed the Agreement, receipt, and deed to memorialize the transaction; and the transaction was performed as Keeter accepted the $5,000.  (**Exhibit B**; **Exhibit C**; **Exhibit D; Exhibit E**).  The fruitful issue before the Court is Keeter's refusal to vacate the Property.  Therefore, summary judgment is warranted.

**V.**    **CONCLUSION**

Consistent with the forgoing, SWMAM respectfully request that this honorable Court order as follows:

    A.  Grant summary judgment on SWMAM's breach of contract claim and order Keeter to vacate the Property;

    B.  Grant summary judgment and dismiss Keeter's complaint in totality.

Respectfully Submitted,

WARNER NORCROSS + JUDD, LLP

*/s/ John A. MacKenzie*
John A. MacKenzie (P80386)
Attorney for Defendants/Counter-Plaintiff
Southwest Michigan Asset Management, LLC
12900 Hall Road, Suite 200
Sterling Heights, MI 48313
Dated: July 1, 2025                586-303-4100
jmackenzie@wnj.com

---

### PROOF OF SERVICE

I hereby certify that on **July 1, 2025**, I electronically filed and served the above document(s) and this Proof of Service with the Clerk of the Court using the CM/ECF File & Serve E-Filing System, which will send notification of such filing to those who are currently on the list to receive e-mail notices for this case..

Warner Norcross + Judd LLP

By: /s/ Bernadette Bartoy
Bernadette Bartoy, Legal Assistant

32500394