UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

EDWARD ALLEN KEETER,

        Debtor.

_____/

EDWARD ALLEN KEETER,

        Plaintiff,

v.

SOUTHWEST MICHIGAN ASSET
MANAGEMENT, LLC, MICHAEL T. GARRISON,
and KYLE M. HAMMOND,

        Defendants.

_____/

SOUTHWEST MICHIGAN ASSET
MANAGEMENT, LLC,

        Counter-Claimant,

v.

EDWARD ALLEN KEETER,

        Counter-Defendant.

_____/

Case No. 23-01759-swd
Hon. Scott W. Dales
Chapter 13

Adversary Pro. No. 24-80076

MEMORANDUM OF DECISION AND ORDER

PRESENT:   HONORABLE SCOTT W. DALES
               Chief United States Bankruptcy Judge

As plaintiff Edward Allen Keeter faced the imminent, nonjudicial foreclosure sale of the

home where he lived for 75 years, defendant Southwest Michigan Asset Management, LLC,

offered to purchase the property (and any redemption rights) for a pittance, at least compared to the equity in the property.

The parties met in Mr. Keeter's driveway and thereafter Southwest tendered a $5,000.00 check to Mr. Keeter and recorded a quitclaim deed pursuant to a separate agreement, both of which Southwest contends, Mr. Keeter signed.

Mr. Keeter never cashed the check and now claims that Southwest or its agent, a notary public, forged his signature on the deed and related agreement. He has refused to relinquish the property to Southwest and instead filed a chapter 13 case and an adversary proceeding through which he seeks to avoid the supposed transfer of his home to Southwest and otherwise quiet title to that property, in his favor.

Southwest, naturally, sees matters quite differently. It contends that Mr. Keeter signed the quitclaim deed and related agreement when the parties met in his driveway, and it seeks specific performance of the agreement, asking this court to compel Mr. Keeter to relinquish the property.

After the close of discovery, both parties filed motions for summary judgment.[1] The court heard oral argument on August 14, 2025, in Kalamazoo, took the matter under advisement, and later permitted the parties to supplement their papers to address issues it raised *sua sponte* during the hearing.[2] The court has considered the Summary Judgment Motions (and responses). For the following reasons will grant the Plaintiff's Motion and deny the Defendant's Motion. Because today's decision does not resolve all claims against all parties, the decision is not final under Rule 54(b).[3]

---

[1] *See* ECF Nos. 36 (the "Plaintiff's Motion") and 37 (the "Defendant's Motion," and with the Plaintiff's Motion referred to as the "Summary Judgment Motions").

[2] Because the court raised the doctrines of judicial estoppel or election of remedies at oral argument, it entered an order on Aug. 18, 2025 under Rule 56(f), giving the parties an opportunity to supplement the Summary Judgment Motions (and responses) (ECF No. 44). Neither party accepted the court's invitation.

[3] In the text of this opinion, references to "Rule" are to the Federal Rules of Civil Procedure. References to "Bankruptcy Code" or to specific statutory sections are to 11 U.S.C. §§ 101-1532, unless otherwise specified.

## I.   JURISDICTION AND AUTHORITY

The United States District Court for the Western District of Michigan has jurisdiction over this bankruptcy case under 28 U.S.C. § 1334(a), but has referred the case, automatically, to the United States Bankruptcy Court for the Western District of Michigan pursuant to 28 U.S.C. § 157(a) and W.D. Mich. LGenR 3.1(a).

Many of the parties' causes of action fall squarely within what bankruptcy professionals refer to as statutory "core" proceedings, such as the claims for avoidance and recovery of allegedly fraudulent transfers pursuant to 28 U.S.C. § 157(b)(2)(H).  Some of the parties' claims, however, do not originate in the Bankruptcy Code, and could exist outside the bankruptcy setting, such as the parties' various claims under Michigan state law and common law.  To the extent the parties seek affirmative relief under non-bankruptcy law in matters that might fall outside the bankruptcy court's core authority, all parties have consented to this court's entry of a final judgment in accordance with the court's Pretrial Order (ECF No. 19).

## II.   FACTUAL BACKGROUND

Mr. Keeter has lived at 1432 Miami Road, Benton Harbor, Michigan 49022 (the "Property") his entire life, and bought the Property from his parents on May 25, 1979, for $50,000.[4] Complaint Seeking Damages in a Core Adversary Proceeding (ECF No. 1, the "Keeter Complaint") at ¶ 11.  In March of 2002, nearly 25 years after acquiring his interest in the Property, Mr. Keeter and his mother obtained a $82,000.00 home equity loan from Fifth Third Bank, secured by a mortgage (the "Mortgage").  *Id.* at ¶ 14.

---

[4] In his schedules, Mr. Keeter separated the backyard and the house at the same address, *see* Schedule A/B pp. 3-4, but because this adversary proceeding involves the parcels collectively and the Transfer included both, the court will combine the backyard and house for the purposes of this decision.

In 2023, Mr. Keeter fell behind on payments, causing Fifth Third Bank to exercise its power of sale by instituting a non-judicial foreclosure proceeding on the Property, setting the auction date for July 14, 2023. *Id.* at ¶ 16. Facing foreclosure and following a multitude of calls from prospective investors, Mr. Keeter agreed to meet with one of the callers, Southwest, on June 2, 2023, to discuss a potential sale of the Property. Counter-Complaint (ECF No. 14, the "Southwest Counterclaim") at ¶ 6.

The June 2, 2023, meeting is where this adversary proceeding takes shape. Southwest alleges that during the meeting, Mr. Keeter signed a quitclaim deed thereby transferring the Property to Southwest (the "Transfer"), pursuant to a separately signed agreement (the "Agreement"), in exchange for a $5,000.00 check. *Id.* at ¶¶ 8-10.

Mr. Keeter recalls these events differently: he agrees that he received a $5,000.00 check from Southwest, but he affirmatively denies that he signed the quitclaim deed or the Agreement, maintaining instead that he only signed a scrap of notebook paper in order to confirm that he received Southwest's check. Keeter Complaint at ¶ 6.

While certain details of the meeting remain unclear, both parties agreed at oral argument that Mr. Keeter never cashed the $5,000.00 check.

After the meeting, Mr. Keeter never relinquished the Property and instead filed a chapter 13 bankruptcy petition on August 1, 2023 (the "Base Case," Case No. 23-01759-SWD). Per the schedules (which are attached to the Plaintiff's Motion), Mr. Keeter listed: (1) the value of the Property at $301,800.00; (2) the Mortgage on the Property as having a remaining balance of $86,000.00; and (3) other debts excluding the Mortgage, some of which are potentially time-barred or owed by Mr. Keeter's business, totaling $157,116.26. *See* Plaintiff's Motion, Exhibit A.

Soon after filing, the court confirmed Mr. Keeter's chapter 13 plan. (Base Case, ECF No. 70). Within the confirmed plan, Mr. Keeter rejected the Agreement as an executory contract and included an additional provision giving him derivative standing to avoid the Transfer and recover the Property for the estate.[5] *See* Chapter 13 Plan at pp. 6 & 11 (Base Case, ECF. Nos. 36 and 64, the "Plan"). Although the Plan afforded Southwest ample time to file a claim on account of the rejection under § 365(g) and § 502(g), Southwest never did.

Exercising his derivate standing, Mr. Keeter commenced this adversary proceeding against Southwest and its agents.[6] Southwest in turn counterclaimed. At the close of discovery, the parties filed their Summary Judgment Motions. The court addresses each motion in turn below.

### III.   LEGAL STANDARD

The court may grant summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56 (applicable here through Fed. R. Bankr. P. 7056); *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192, 195 (6th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In determining whether there is no genuine issue of material fact, the court must construe all evidence and reasonable inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 578 (1986); *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).

---

[5] Mr. Keeter's derivative standing relies on the court's confirmation order and *In re Gibson Grp., Inc.*, 66 F.3d 1436, 1446 (6th Cir. 1995).

[6] Mr. Keeter's documents throughout this proceeding have colloquially referred to recovering the Property as "turnover." While Mr. Keeter's papers could be more precise on this point, the Keeter Complaint clearly seeks recovery of the Property under § 550(a). Moreover, Southwest has not challenged Mr. Keeter's standing to avoid the Transfer and recover the Property. Finally, the Plan's 100% dividend to unsecured creditors is premised on the effect of recovery on the liquidation value and Mr. Keeter's anticipated success not just in avoiding the Transfer under § 548, but specifically in recovering the Property under § 550.

The moving party bears the initial burden to demonstrate that no genuine issue of material fact exists by identifying, among other things, the portions of the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (citations omitted). Upon such a showing, the burden then shifts to the non-moving party to demonstrate a genuine issue of material fact for trial. *Id.* at 324–25. However, production of a mere "scintilla of evidence" in support of an essential element of a claim will not forestall summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted).

Where, as here, the parties file cross motions for summary judgment, the standard of review does not change. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 n. 6 (6th Cir. 1999) (citing *Atl. Richfield Co. v. Monarch Leasing Co.*, 84 F.3d 204, 206 (6th Cir. 1996)). The court must consider each motion separately on the merits because each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. *Id.* (citing *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994) and *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

## IV.    ANALYSIS

Mr. Keeter seeks summary judgment avoiding the Transfer as constructively fraudulent under § 548 and recovering the Property from Southwest -- the initial transferee -- under § 550. He also seeks summary judgment dismissing Southwest's Counterclaim for specific performance of the Agreement.[7] The court will grant the Plaintiff's Motion in both respects.

---

[7] Plaintiff's Motion does not mention Southwest's claim for rent.

Through his complaint, Mr. Keeter seeks avoidance of the Transfer under § 548(a)(1)(B), and (assuming avoidance) recovery under § 550(a)(1).  Southwest's counsel confirmed at oral argument that his client does not challenge Mr. Keeter's standing to assert these remedies which the Bankruptcy Code vests in a trustee, rather than a debtor, despite previously questioning Mr. Keeter's standing in its answer.

Avoidance and recovery are separate remedies under the Bankruptcy Code.  *Suhar v. Burns (In re Burns)*, 322 F.3d 421, 427 (6th Cir. 2003) ("avoidance and recovery are distinct concepts and processes").  As a first step, Mr. Keeter seeks to avoid the Transfer of the Property not as *actually* fraudulent, but as *constructively* fraudulent, given its effect on creditors.  The statute provides in relevant part as follows:

> (a) (1) The trustee may avoid any transfer … of an interest of the debtor in property … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . .

11 U.S.C. § 548(a)(1)(B).

With respect to the first element -- the transfer of an interest of the debtor in property -- the court finds no genuine issue of material fact.  Mr. Keeter concedes (for purposes of Plaintiff's Motion) that he quitclaimed all interests in his residence to Southwest. Given Mr. Keeter's inconsistent position in this proceeding that he did not sign the quitclaim deed, Southwest's counsel argued, evidently against his client's interest and position espoused in the Defendant's Motion, that there is a genuine issue of material fact regarding whether a transfer occurred.  The unseemliness

in Mr. Keeter's assertion of inconsistent positions upon which Southwest relies in challenging the fact of the Transfer also prompted the court to consider the judicial estoppel doctrine.[8]

In *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001), the Supreme Court explained that the judicial estoppel doctrine "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Maine*, 532 U.S. at 749. That is precisely what occurred here. Through his Plan, as Mr. Keeter argued in support of Plaintiff's Motion, he rejected the Agreement (which required him to deliver the Property pursuant to the quitclaim deed) as an executory contract under § 365. Characterizing the Agreement as an executory contract under § 365 -- and then arguing that Southwest's failure to file a timely proof of claim for breach of that Agreement -- necessarily implies the effectiveness of the Agreement -- an assertion clearly at odds with the forgery allegations. The court confirmed the Plan, thereby adopting Mr. Keeter's characterization of the Agreement, and carrying the rejection into effect. At oral argument, Mr. Keeter's counsel argued that the rejection of the Agreement (which constitutes a "breach" under § 365(g)) relieved his client of the obligation to relinquish the Property that he quitclaimed pursuant to the Agreement. *Mission Prod. Holdings v. Tempnology, LLC*, 587 U.S. 370 (2019) (rejection constitutes breach of contract with state law consequences); Samantha B. Caraballo, Research Memoranda, *Rejection of an Executory Contract Does Not Invalidate Rights Exercised or Performance Rendered Prior to Rejection*, 17 St. John's Bankr. Research Libr., No. 2, 2025, at 1, 8-9 (emphasizing that rejection of an executory contract constitutes a breach of contract). Under the circumstances, the court regards Mr. Keeter as judicially estopped from asserting forgery. Despite having the opportunity to contest the

---

[8] Curiously, Mr. Keeter argues that he transferred the Property pursuant to a quitclaim deed on which he alleges Southwest or its agents forged his signature. Although parties may assert inconsistent positions in pleadings under Rule 8(d)(3), and arguably even at trial, the judicial estoppel doctrine cuts off that right after the court has accepted one of the litigant's inconsistent positions.

application of judicial estoppel through post-argument briefing, Mr. Keeter chose not to challenge the estoppel the court proposed during oral argument.

Accordingly, the court finds there is no genuine issue of material fact that the Transfer occurred pursuant to the quitclaim deed and the Agreement or, for that matter, that it occurred within two years of the petition date.

Similarly, the court finds no genuine dispute that Mr. Keeter transferred the Property to Southwest for less than reasonably equivalent value, another prerequisite to avoidance. In Schedule A/B, Mr. Keeter avers that the Property is worth $301,800.00 (without subtracting Fifth Third Bank's mortgage lien of $86,000.00). In other words, when he quitclaimed his interest in the Property to Southwest in exchange for the $5,000.00 check (which he did not cash), he parted with over $200,000.00 in equity -- value that, but for the Transfer, would have been available to his creditors.

Southwest's counsel conceded at oral argument that a Debtor's schedules and other statements, made under penalty of perjury, are the equivalent of an affidavit at least for purposes of Rule 56.[9]  Even with this in mind, Southwest's counsel argued that Mr. Keeter did not offer competent evidence of the Property's value and he urged the court to deny the Plaintiff's Motion because Mr. Keeter offered only his own opinion, without an appraisal or other more formal indicia of value.

The court rejects Southwest's challenge to Mr. Keeter's evidence of value as inconsistent with longstanding case law that allows the owner of property, even though unqualified as an expert

---

[9] The schedules, at least as admitted against someone other than the Debtor, may qualify as out-of-court statements offered for the truth of the matter asserted, but almost every affidavit offered in connection with a summary judgment motion is hearsay. The crux of the issue is not whether an affidavit is hearsay, but whether an affidavit or declaration used to support or oppose a summary motion is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Using this definition, the schedules fit the bill.

under the rules of evidence, to opine on its value. *Herremans v. Fedo (In re Herremans)*, 653 B.R. 386, 405 (Bankr. W.D. Mich. 2023) ("Courts generally hold that a property owner is competent to give an opinion of the value of his/her property under Fed. R. Evid. 701.") (quoting *In re Smith*, 267 B.R. 568, 573 n.3 (Bankr. S.D. Ohio 2001)).  Because at trial the court could admit Mr. Keeter's opinion as evidence of value, and if the fact finder credited that opinion, the evidence could support relief in Mr. Keeter's favor.  The fact that the opinion is "self-serving" goes not to admissibility but to weight, and courts generally do not weigh evidence under Rule 56.

Against Mr. Keeter's evidence of the Property's value, Southwest offered no evidence of its own, thereby failing to raise a genuine issue of fact on this point under Rule 56(c)(1)(A).  The court finds that Mr. Keeter transferred property worth $214,000.00 (after deducting Fifth Third's lien) to Southwest in exchange for Southwest's $5,000.00 tender in return.

Although Southwest argues that it "purchased Mr. Keeter's debt" and therefore gave an additional $86,000.00 in value, this representation is utterly inconsistent with the text of the Agreement and, as counsel conceded during oral argument, the Agreement did not obligate Southwest to satisfy Mr. Keeter's debt.  Moreover, even if Southwest had assumed the debt, without any involvement or consent from Fifth Third Bank, the supposed assumption could not relieve Mr. Keeter of his obligations to the bank.  *See Kollen v. Sooy*, 137 N.W. 808, 810 (Mich. 1912) (third party's assumption of a mortgage does not relieve the original obligor of his mortgage obligation).

But even assuming (contrary to fact) that the court should credit Southwest for retiring the Fifth Third debt, at most Southwest gave $91,000.00 in value in exchange for over $200,000.00 in Mr. Keeter's former equity in the Property.  The court does not regard that disparate exchange as "reasonably equivalent," even though § 548(a)(1)(B) does not require an exact *quid pro quo. BFP*

*v. Resol. Trust Corp.*, 511 U.S. 540, 548 n. 4 (1994) ("Our discussion assumes that the phrase 'reasonably equivalent' means 'approximately equivalent,' or 'roughly equivalent.'").

The court also disagrees with Southwest's suggestion that, in accepting the $5,000.00 check on the eve of foreclosure, Mr. Keeter made the best of a bad situation and that we should consider the value exchanged for the Property from his point of view. This subjective and debtor-centric approach is at odds with the "perspective of the creditors test," which our District Court has described as "the well-worn test applied in constructive fraud claims." *Cf. Hagan v. Mickens*, 589 B.R. 594, 600 (W.D. Mich. 2018) (citing commentary to the Uniform Fraudulent Transfer Act § 3 for the proposition that "[c]onsideration having no utility from a creditor's viewpoint does not satisfy the statutory definition" of "value").

Moreover, the court finds there is no genuine factual dispute regarding whether the Transfer rendered Mr. Keeter insolvent -- it did. For most entities, including an individual, the Bankruptcy Code clearly defines the term "insolvent" (including for purposes of § 548(a)(1)(B)), using a balance sheet approach that simply invites a comparison between the value of assets remaining post-transfer and the "debts" at that time -- another defined term. *In re Checker Motors Corp.*, 495 B.R. 355, 357-58 (Bankr. W.D. Mich. 2013) ("as for how the debtor's insolvency is to be determined, both Section 548 and MUFTA compare the fair value of the debtor's assets with the sum of its debts. This approach equates roughly to a debtor's balance sheet.").

According to Mr. Keeter's schedules, submitted in support of Plaintiff's Motion, after the Transfer he owned property totaling not more than $24,000.00, consisting of $9,200.00 in non-residential real estate and a farrago of personal property, such as a 2009 Dodge Caravan, electronics, and a high school ring, totaling $14,593.86. Like Southwest's tepid challenge to the

value of the transferred real estate, Southwest has not undermined Mr. Keeter's valuation of the property that he retained after the Transfer.

Against these assets, Mr. Keeter contends that he personally owes $243,116.26, as of the petition date (within about two months after the Transfer) -- an amount well in excess of the remaining property's value.  Because, as noted above, Mr. Keeter's schedules are the equivalent of an affidavit concerning matters within his ken, Plaintiff's Motion establishes that the Transfer rendered him insolvent within the meaning of § 101(32)(A) and § 548(a)(1)(B)(ii)(I).

Instead, Southwest tries attacking Mr. Keeter's insolvency calculation not by undermining his valuation of remaining assets -- approximately $24,000.00 according to the sworn schedules -- but by disregarding the debts as either time-barred or business debts allegedly owed by some unspecified entity (other than Mr. Keeter).  The effort, however, is fruitless, for a number of reasons.

First, the schedules reflect that Mr. Keeter's debt to Fifth Third remains outstanding and, given the broad definition of "claim" (and mirror-image definition of "debt"), is still a "debt" despite its secured status.  11 U.S.C. § 101(5) and (12).  Southwest does not dispute that Mr. Keeter owes Fifth Third approximately $86,000.00, or that the remaining property is worth several multiples less than that.  This alone establishes insolvency.

Moreover, the court rejects Southwest's intuitively appealing (but ultimately flawed) notion that Mr. Keeter's arguably time-barred debts do not play any role in calculating his post-transfer insolvency, given the definitions of "claim" and "debt," as the Supreme Court explained in *Midland Funding, LLC v. Johnson*, 581 U.S. 224 (2017).

In raising the time-bar argument, Southwest contends, as the debtor unsuccessfully did in *Midland Funding*, that a "claim" must be enforceable to give rise to a "debt," and that time-barred

debts are not enforceable. In Southwest's view, stale debts do not count. In response, Mr. Keeter's counsel asserted during oral argument that a time-barred debt is still a debt, and it does not "magically go away" with the passage of time.

In *Midland Funding*, Justice Breyer observed that "the word 'enforceable' does not appear in the Code's definition" of claim. *Midland Funding*, 581 U.S. at 229. Moreover, as the court noted during oral argument, a time-barred claim is simply a claim that is possibly subject to an affirmative defense. Justice Breyer made the same observation in *Midland Funding*. *Id.* at 230 ("The law has long treated unenforceability of a claim (due to the expiration of the limitations period) as an affirmative defense."). Indeed, the high court cited Michigan law, among other authorities, in making the point that a stale claim is still a claim. *Id.* at 228 (citing *De Vries v. Secretary of State*, 44 N.W.2d 872, 876 (Mich. 1950)). And, the Supreme Court also teaches that the terms "debt" and "claim" are "coextensive." *See Pennsylvania Dep't of Public Welfare v. Davenport,* 495 U.S. 552, 558 (1990). It follows, after *Midland Funding,* that even a time-barred claim gives rise to a "debt" and that the ultimate enforceability of a "claim" does not determine its corresponding status as a "debt." *Cf. In re Schubiner*, 590 B.R. 362, 385-86 (Bankr. E.D. Mich. 2018) (action to collect a debt unenforceable under non-bankruptcy law could nevertheless violate the discharge injunction against collecting a debt).

As relevant here, therefore, Southwest's argument against including Mr. Keeter's potentially time-barred debts in the statutory calculation of insolvency does not create a genuine issue of material fact on this point. Applying the Bankruptcy Code's definitions of "insolvent" (§ 101(32)(A)) and "claim" (§ 101(5)) and "debt" (§ 101(12)), it appears beyond cavil that the Transfer of Mr. Keeter's primary asset rendered him "insolvent," even excluding the supposed "business" debts that Southwest also seeks to exclude.

Regarding Southwest's proposed exclusion of the so-called business debts from the insolvency calculus (approximately $62,000.00 according to Schedule F), Defendant's counsel argues that some other related (and unspecified) entity[10] owes the so-called business debts. The argument is supported only by unreasonable inference and not evidence, and in any case does not raise a genuine issue of material fact because Mr. Keeter's debts described immediately above plainly exceed his post-Transfer assets, even excluding the so-called business debts. Therefore, the court finds that the Transfer, through which he parted with over $200,000.00 in equity in exchange for a $5,000.00 check, rendered Mr. Keeter insolvent.

In summary, the court finds no genuine issue as to any material fact regarding Mr. Keeter's cause of action under § 548(a)(1)(B). When the court enters final judgment, it shall include a declaration avoiding the Transfer.

In addition to seeking avoidance of the Transfer, Plaintiff's Motion (and brief) also requests "turnover" of the Property, which the court interprets more precisely as "recovery" under § 550 -- part of the claim for relief in his complaint. *See* Keeter Complaint at ¶ 51. Southwest, clearly a sophisticated investor with obviously sophisticated counsel, did not respond to the turnover request included in the Plaintiff's Motion.

The record makes clear that Southwest is an initial transferee and therefore (assuming avoidance) has no defenses to recovery under § 550(b), which the statute grants only to subsequent transferees. Moreover, Mr. Keeter did not negotiate the $5,000.00 check that Southwest tendered in exchange for the Property, making any protection under § 548(c) or otherwise unnecessary. Because the court regards Southwest as having waived any opposition to recovery (as opposed to

---

[10] At oral argument, Southwest's counsel conceded he did not locate any such separate entity after reviewing the Michigan Secretary of State's online corporation records. Mr. Keeter's statement of financial affairs describes his "business" as a "sole proprietorship" which, if true, Southwest's counsel forthrightly conceded would defeat his business-debt challenge to insolvency.

avoidance), the court's final judgment will direct Southwest to reconvey the Property to Mr. Keeter (for the sake of the land records) and shall otherwise treat the Property as included within the estate under § 541(a)(3).

One final note to correct the court's suggestion at oral argument that a transferee whose property is recovered under § 550 may have a claim arising from the recovery under § 502(h). As Mr. Keeter's counsel observed, any such claim, if timely filed, would be subject to objection. Moreover, any such claim would not necessarily comprise the value of the property transferred.[11] In any event, these are issues for another day.

The final aspect of the Plaintiff's Motion involves his request to dismiss Southwest's Counterclaim.

The court's decision to grant summary judgment on Mr. Keeter's avoidance and recovery counts is incompatible with granting any relief to Southwest on its counterclaim for specific performance. Southwest's Counterclaim, therefore, must yield to the avoidance and recovery. Specific performance, after all, is a remedy within the court's discretion, and awarding specific performance in the face of the court's decision to avoid the Transfer and recover the Property is nonsensical and an abuse of discretion based on this record. Moreover, the equitable remedy of specific performance for breach of the Agreement falls under the definition of "claim" pursuant to § 101(5)(B), thus making Southwest's remedy for breach of contract untimely under

---

[11] *See In re Dreier LLP,* No. 08-15051-SMB, 2012 WL 4867376, at *3 (Bankr. S.D.N.Y. Oct. 12, 2012) ("On its face, § 502(h) gives a pre-petition claim to a fraudulent transferee where the trustee recovers the transfer under § 550.") At oral argument, the court may have confused Southwest's breach of contract claim under § 502(g) with a claim arising under § 502(h) upon the recovery of property under § 550. More specifically, the rule of restoration upon which § 502(h) depends may not give rise to a claim in favor of any entity that did not give consideration in exchange for the avoided transfer. *Id.* In any event, any claim that Southwest might assert under § 502(h) is subject to objection by Mr. Keeter or other interested party, and any claim under § 502(g) is similarly subject to objection as untimely under the Plan (which set a deadline of 180 days after confirmation for filing such claims).

the Plan.  Accordingly, Mr. Keeter is entitled to summary judgment dismissing the request for specific performance.

For similar reasons, even recognizing that a court must consider each summary judgment motion independently, the court will deny the Defendant's Motion for the reasons just given regarding the proposed avoidance and recovery, and untimeliness of the claim.

## V.    CONCLUSION AND ORDER

Although the court's decision today grants Mr. Keeter's estate most of the relief he sought in this adversary proceeding in the form of avoidance and recovery and the court has dismissed the claims against Michael T. Garrison on stipulation, Mr. Keeter's claims against Kyle Hammond for "notarial misconduct" remain pending, rendering today's decision interlocutory under the single judgment rule.  Fed. R. Civ. P. 54(b).  In addition, in the recent exchange of motions, the parties did not address Southwest's Counterclaim for rent (both prepetition and post-petition).[12]

Unless the parties stipulate to resolve the remaining claims, trial in this matter will commence on Wednesday, October 29, 2025, at 10:00 a.m., and the deadlines prescribed in the Pretrial Order continue to apply.  If the parties satisfy the court that they have resolved all remaining claims before trial, the court will enter judgment avoiding the Transfer, directing recovery of the Property, and denying all other relief.  The entry of that final declaratory judgment will trigger the parties' respective appellate rights under 28 U.S.C. § 158.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows: the Plaintiff's Motion is GRANTED, and the Defendant's Motion is DENIED.

---

[12] A post-petition claim for rental value of the Property may implicate the administrative expense process, and this adversary proceeding does not give the chapter 13 trustee or the creditor body sufficient notice of that portion of Southwest's Counterclaim.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Rule 9022 and LBR 5005-4 upon John MacKenzie, Esq., and Roger G. Cotner, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated September 2, 2025**



Scott W. Dales
United States Bankruptcy Judge